No. 05-960C
(Judge Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STATES ROOFING CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS
# APPENDIX VOLUME THREE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRYANT G. SNEE
Assistant Director

OF COUNSEL:

DAVID KOMAN
Department of the Navy

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

December 30, 2005

Attorneys for Defendant

## INDEX TO APPENDIX

Page(s)

### APPENDIX VOLUME ONE

September 1, 2004 Final Decision . . . . . . . . . . . . . . . . . 1

### APPENDIX VOLUME TWO

September 1, 2004 Final Decision (cont.) . . . . . . . . . . . . 27

Final Decision no. L04-015 Certified Mail
Receipt dated September 3, 2004 . . . . . . . . . . . . . . 32

September 30, 2004 Final Decision . . . . . . . . . . . . . . . 34

September 30, 2004 Final Decision
(facsimile copy) and email . . . . . . . . . . . . . . . . 36

ASBCA Rules (selected portions) . . . . . . . . . . . . . . . . 42

November 23, 2004 Notice of Appeal . . . . . . . . . . . . . . 48

November 29, 2004 Notice of Docketing . . . . . . . . . . . . . 53

December 3, 2004 Notice of Appeal . . . . . . . . . . . . . . . 54

### APPENDIX VOLUME THREE

December 3, 2004 Notice of Docketing . . . . . . . . . . . . . 63

November 23, 2004 Notice of Appeal indicating
receipt by contracting officer on
November 29, 2004 . . . . . . . . . . . . . . . . . . . . . 64

SRC ASBCA Complaint . . . . . . . . . . . . . . . . . . . . . . 69

### APPENDIX VOLUME FOUR

Government Answer . . . . . . . . . . . . . . . . . . . . . . . 86

November 16, 2005 letter to ASBCA (with attachments) . . . . 106

ARMED SERVICES BOARD OF CONTRACT APPEALS
SKYLINE 6
5109 LEESBURG PIKE
FALLS CHURCH, VA 22041-3208
Telephone: (703) 681-8502

3 December 2004

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| States Roofing Corporation | ) | ASBCA No. 54860 |
| | ) | |
| Under Contract No. N62470-97-C-8319 | ) | |

NOTICE OF DOCKETING

Neil S. Lowenstein, Esq.
Vandeventer Black LLP
500 World Trade Center
Norfolk, VA 23510-1699

Your appeal (18 April 2003 claim) has been assigned ASBCA docket number 54860. Please refer to the docket number in all future correspondence. Send a copy of all correspondence directed to the Board, including enclosures, to government counsel at the address below (noting on the Board's copy that you have done so), unless the Board orders otherwise. A standard format for correspondence and pleadings is contained in the Board's Rules.

Enclosed are the Board's Rules, a Notice Regarding Alternative Methods of Dispute Resolution (ADR), and procedures relating to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504. Board Rule 6 requires you to file your complaint within 30 days of your receipt of this docketing notice.

You may elect the ACCELERATED PROCEDURE if the amount in dispute is $100,000 or less. You may elect the EXPEDITED (SMALL CLAIMS) PROCEDURE if the amount in dispute is $50,000 or less. Rule 12 describes these procedures, including time limits.

You are urged to consider ADR procedures for disposition of your appeal. The enclosed notice describes some of the ADR methods which parties have used successfully in the past. Sample ADR agreements are available upon request.

Should you prevail on your appeal and be otherwise entitled, you may file an application for EAJA fees and expenses. Your application must be filed within 30 days of a final disposition of the appeal.

Until another attorney enters an appearance, the Government is represented by the Navy Chief Trial Attorney, Navy Litigation Office, Office of the General Counsel, Washington Navy Yard, 720 Kennon Street, SE, Room 233, Washington, DC 20374-5013, (202) 685-6966.

CATHERINE A. STANTON
Recorder

Enclosures

063

Printed on Recycled Paper

VANDEVENTER BLACK LLP
Attorneys At Law

500 World Trade Center • Norfolk, Virginia 23510-1699 • Office 757.446.8600 • Fax 757.446.8670

Neil S. Lowenstein
757.446.8672- direct
757.446.8670 - fax
nlowenstein@vanblk.com
Licensed in DC, NC, and VA

2004 NOV 29 10:27

November 23, 2004

Recorder
Armed Services Board of Contract Appeals
Skyline Six, Room 703
5109 Leesburg Pike
Falls Church, VA 22041-3208

U.S. MAIL:
CERTIFIED MAIL #7000 1670 0007 2369 7753
RETURN RECEIPT REQUESTED

Re: ASBCA No. ____________ (New Appeal)
Appeal of States Roofing Corporation
Under Contract No. N62470-97-C-8319

NOTICE OF APPEAL
Final Decision Dated September 1, 2004 (L04-015)

Dear Sir or Madam:

This firm represents States Roofing Corporation (SRC). SRC, by counsel, hereby appeals the decision of the Contracting Officer dated September 1, 2004, reference L04-015 ("the Final Decision"), which acknowledges in part and denies in part SRC's claims for money and time as set forth in SRC's Request for Final Contracting Officer's Decision dated April 18, 2003 ("the RFFD"). The agency involved in this dispute is the Department of the Navy, Naval Facilities Engineering Command, Atlantic ("the Navy"). The contract is Contract No. N62470-97-C-8319, Building W-143 Roof Replacement, Wall Repair and Painting, Naval Station, Norfolk, Virginia ("the Contract").

In the RFFD, SRC sought $1,696,492.00 and 132 calendar days time extension. Following submission of the RFFD, the Navy issued unilateral modification P00008 dated 23 April 2003[1], definitizing P00001 ($23,445.00 decrease; 0 days), P00002 ($187,159.00 decrease; 0 days), P00003 ($213,949.00 increase; 0 days), P00004 ($54,524 increase; 0 days), and further increasing the Contract $129,391.00 and adding 45 calendar days; for a collective monetary adjustment of $187,260.00 and a collective time increase of 45 calendar days.

In the Final Decision, the Contracting Officer additionally found entitlement due SRC for subclaim item numbers 18, 20, 23, 48, 50, 53, 54, 55, 56, and 58 of the RFFD in the total sum of $53,375.00.[2] No additional days were awarded. All other portions of the RFFD, except those compensated under P00008, were denied in their entirety. Subsequent to the Final Decision, the Contracting Officer issued a second unilateral modification P00008 dated 22 October 2004 in the amount of $56,522.00 "for items as determined by Contracting Officer's Final Decision L04-015 dated 1 September 2004"

[1] The Final Decision references P00007; however, this is a misnomer. P00007 was presented to SRC as a bilateral modification, but not accepted by SRC. The Contracting Officer subsequently issued unilateral P00008 instead, which had the same adjustments as P00007, and indeed appears to have included the same pages 2 – 5 of P00007, including the reference to that modification, perhaps explaining the misnomer.
[2] The Final Decision summarizes the amount awarded on Page 30 as $53,400, but this appears a mathematical error.

("P00008b"). P00008b included $3,134.00 in interest due as calculated by the Contracting Officer through 10/31/04.[3]

In any case, prior the Contracting Officer's issuance of the Final Decision, SRC submitted supplemental claim support for additional monies and credits due with respect to the RFFD claim items based upon information brought to SRC's attention in conjunction with an audit of the RFFD requested by the Navy by the Defense Contracting Auditing Agency. That supplemental claim support was furnished through counsel to the Contracting Officer on August 25, 2004 via correspondence of that same date.

Those supplements resulted in an aggregate increase of the claim amount by $73,968.26. By letter dated September 16, 2004, the Contract Officer advised nothing in the supplementation altered her analysis of the amounts due SRC. Thereafter, by letter dated September 30, 2004, the Contracting Officer issued a letter denying SRC's "supplemental claim" and advising that the same was a "final decision" ("the Supplemental Final Decision").

The Final Decision is erroneous in fact and law to the extent denying SRC's claims, and SRC appeals the same. SRC's supplemental information furnished was not a separate claim, but rather merely supplementation of the claim already made. Regardless, to the extent the same is deemed a supplemental claim and/or the Supplemental Final Decision otherwise deemed a proper final decision with respect thereto, the Supplemental Final Decision is erroneous in fact and law as well, and too is being appealed by SRC via separate correspondence.

SRC seeks recovery of the Contract balance still due and not included in issued modifications, at least $1,251,128.26, and including applicable time extensions due[4]. Summary of SRC's claims, the amounts previously awarded, the amounts awarded in the Final Decision, and the balance due is attached. SRC additionally seeks interest, legal fees, and costs. This appeal is timely filed by deposit into the United States mails within ninety days of SRC's receipt of the Final Decision. Copy of this appeal is being furnished, with enclosures, to the Contracting Officer and Navy counsel as noted below. This appeal is filed by the undersigned on behalf of SRC, as authorized attorney and counsel for SRC.

Thank you for your assistance in filing this appeal. Because of the Contracting Officer's action in issuing a "final decision" with respect to the supplemental claim information, SRC is as noted above concurrently appealing the same via separate correspondence. Because of the interrelationship of the two, however, we suggest and request that the two appeals be consolidated. Should you have any questions or need anything further, please let me know.

---

[3] P00008b indicates an erroneous total contract price of $2,706,522.00, which appears a scribner's error. Including the monies awarded in P00008b, the total contract balance, not including the additional monies due SRC, should have been noted in P00008b as $2,893,782.00.

[4] By awarding 45 days, the Contract was extended through the Beneficial Occupancy Date (BOD), equating to an extended performance period of 81 calendar days. The Contracting Officer compensated SRC in part for the extended days, but not fully as included in the remaining claim amounts due and summarized above, herein, and herewith.

Respectfully submitted,
VANDEVENTER BLACK LLP

Neil S. Lowenstein
Attorney for States Roofing Corporation

Enclosure
cc: w/encl. to:

Patricia S. Kellihan, Contracting Officer
Department of the Navy
Naval Facilities Engineering Command Atlantic
6506 Hampton Boulevard
Norfolk, Virginia 23508-1278

Stephen R. O'Neil, Esquire
Navy Litigation Office
Office of the General Counsel
Department of the Navy
720 Kennon Street SE, Rm 233
Washington Navy Yard, DC 20374

Hugh DeLauney, President
States Roofing Corporation
1215 St. Julian Avenue
Norfolk, Virginia 23504

N:\Data\Cpc\States Roofing-02031\W143\board ltr (appeal).doc

BUILDING W-143 ROOF REPLACEMENT PROJECT

| RFFD Ref. | Description | RFFD Amount | SRC Supplemental | SRC Claim Total | Claim Days | P00001 - P0006 | P00008 | Final Decision Award (P00008b) | Gov't Total | Awarded Days | Contract Balance Due | Contract Days Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| II.1 | Crane (Cranelift and Elevator) | $ 427,485.00 | | $ 427,485.00 | | $ 113,000.00 | $ 213,949.00 | $ - | $ 326,949.00 | | $ 100,516.00 | |
| II.2 | Parapet Walls (Credit for Painting; Installation of Dynaclad) | $ 147,875.00 | $ (6,551.74) | $ 141,323.26 | | | $ - | $ - | $ - | | $ 141,323.26 | |
| II.3 | Credit for Deleting Wood Blocking | $ (17,966.00) | | $ (17,966.00) | | | $ (33,105.00) | $ - | $ (33,105.00) | | $ 15,139.00 | |
| II.4 | Expansion Joint Installation Roof K | $ 4,255.00 | | $ 4,255.00 | | | $ 4,255.00 | $ - | $ 4,255.00 | | $ - | |
| II.5 | Modify 3214 lf of BUR for Concrete Cant | $ 3,813.00 | | $ 3,813.00 | | | $ 3,813.00 | $ - | $ 3,813.00 | | $ - | |
| II.6 | Hidden Concrete Slab Areas | $ 871.00 | | $ 871.00 | | | $ 871.00 | $ - | $ 871.00 | | $ - | |
| II.7 | Cover 10" Hole in Roof I | $ 335.00 | | $ 335.00 | | | $ 335.00 | $ - | $ 335.00 | | $ - | |
| II.8 | Cover 8" Hole in Deck | $ 329.00 | | $ 329.00 | | | $ 329.00 | $ - | $ 329.00 | | $ - | |
| II.9 | Repair Spalled Concrete | $ 99,664.00 | | $ 99,664.00 | | $ 92,000.00 | $ 6,361.00 | $ - | $ 98,361.00 | | $ 1,303.00 | |
| II.10 | Double Cylinder Locks and Related Door Changes | $ 1,728.00 | | $ 1,728.00 | | | $ 1,728.00 | $ - | $ 1,728.00 | | $ - | |
| II.11 | Raise Feeder Conduit | $ 1,403.00 | | $ 1,403.00 | | | $ 1,403.00 | $ - | $ 1,403.00 | | $ - | |
| II.12 | Elastomeric Coating | $ (8,230.00) | | $ (8,230.00) | | | $ (8,230.00) | $ - | $ (8,230.00) | | $ - | |
| II.13 | Remove Protrusions | $ 1,449.00 | | $ 1,449.00 | | | $ 1,449.00 | $ - | $ 1,449.00 | | $ - | |
| II.14 | Lost Time: Tractor-Trailers | $ 1,228.00 | | $ 1,228.00 | | | $ - | $ - | $ - | | $ 1,228.00 | |
| II.15 | Lost Time: Fire Drill | $ 1,005.00 | | $ 1,005.00 | | | $ - | $ - | $ - | | $ 1,005.00 | |
| II.16 | Removal of Hot Wires | $ 791.00 | | $ 791.00 | | | $ 791.00 | $ - | $ 791.00 | | $ - | |
| II.17 | Chipping Out Concrete | $ 441.00 | | $ 441.00 | | | $ 441.00 | $ - | $ 441.00 | | $ - | |
| II.18 | Remove Antenna Bracket | $ 834.00 | | $ 834.00 | | | | $ 224.00 | $ 224.00 | | $ 610.00 | |
| II.19 | Raise Height of Small A/C on Radio Room, Roof G | $ 2,613.00 | | $ 2,613.00 | | | $ 2,613.00 | $ - | $ 2,613.00 | | $ - | |
| II.20 | Replace Door with Plywood | $ 337.00 | | $ 337.00 | | | | $ 337.00 | $ 337.00 | | $ - | |
| II.21 | Crack in Door, Roof C | $ 1,452.00 | | $ 1,452.00 | | | $ - | $ - | $ - | | $ 1,452.00 | |
| II.22 | Removal of Additional Asphalt | $ 129,524.00 | | $ 129,524.00 | | $ 75,000.00 | $ 54,524.00 | $ - | $ 129,524.00 | | $ - | |
| II.23 | Cancellation of Roof Cells D and F | $ (239,144.00) | $ 18,467.00 | $ (220,677.00) | | | $ (361,813.00) | $ 49,523.00 | $ (312,290.00) | | $ 91,613.00 | |
| II.24 | Exterior Stairwell | $ 36,221.00 | | $ 36,221.00 | | | $ 36,221.00 | $ - | $ 36,221.00 | | $ - | |
| II.25 | Leak Clean Up | $ 758.00 | | $ 758.00 | | | $ - | $ - | $ - | | $ 758.00 | |
| II.26 | Parapet Protrusion Dynaclad | $ 489.00 | | $ 489.00 | | | $ 489.00 | $ - | $ 489.00 | | $ - | |
| II.27 | Pitch Pockets | $ 710.00 | | $ 710.00 | | | $ 710.00 | $ - | $ 710.00 | | $ - | |
| II.28 | Anchor Bolts for Signage | $ 2,445.00 | | $ 2,445.00 | | | $ 2,445.00 | $ - | $ 2,445.00 | | $ - | |
| II.29 | Roof K Dynaclad | $ 26,962.00 | | $ 26,962.00 | | | $ 26,962.00 | $ - | $ 26,962.00 | | $ - | |
| II.30 | Fabricate and Install HVAC Stands and Enclosures | $ 17,890.00 | | $ 17,890.00 | | | $ 17,890.00 | $ - | $ 17,890.00 | | $ - | |
| II.31 | Low Spots | $ 78,151.00 | | $ 78,151.00 | | | $ 78,151.00 | $ - | $ 78,151.00 | | $ - | |
| II.32 | Expansion Joint Repairs | $ 48,411.00 | | $ 48,411.00 | | | $ 48,411.00 | $ - | $ 48,411.00 | | $ - | |
| II.33 | Apply ASTEC | $ 26,470.00 | | $ 26,470.00 | | | $ 26,470.00 | $ - | $ 26,470.00 | | $ - | |
| II.34 | Shoring CASU | $ 1,382.00 | | $ 1,382.00 | | | $ 1,382.00 | $ - | $ 1,382.00 | | $ - | |
| II.35 | Cut Off Steel PH Ladders | $ 3,323.00 | | $ 3,323.00 | | | $ 3,323.00 | $ - | $ 3,323.00 | | $ - | |
| II.36 | Deteriorated Brick | $ 1,951.00 | | $ 1,951.00 | | | $ 1,951.00 | $ - | $ 1,951.00 | | $ - | |
| II.37 | Relocate Crane | $ 349.00 | | $ 349.00 | | | $ 349.00 | $ - | $ 349.00 | | $ - | |
| II.38 | Conex Boxes | $ 9,561.00 | | $ 9,561.00 | | | $ - | $ - | $ - | | $ 9,561.00 | |
| II.39 | Cracks in Concrete, Cell E | $ 30,685.00 | | $ 30,685.00 | | | $ - | $ - | $ - | | $ 30,685.00 | |
| II.40 | Night Shift for Demolition of Roof Cell E | $ 7,016.00 | | $ 7,016.00 | | | $ 7,016.00 | $ - | $ 7,016.00 | | $ - | |
| II.41 | Modify Insulation | $ 545.00 | | $ 545.00 | | | $ 545.00 | $ - | $ 545.00 | | $ - | |
| II.42 | Fabricate and Install Two New HVAC Enclosures | $ 1,378.00 | | $ 1,378.00 | | | $ 1,378.00 | $ - | $ 1,378.00 | | $ - | |
| II.43 | Nine Protrusions in Roof | $ 1,025.00 | | $ 1,025.00 | | | $ 1,033.00 | $ - | $ 1,033.00 | | $ (8.00) | |
| II.44 | Pitch Pockets for #26 | $ 1,257.00 | | $ 1,257.00 | | | $ 1,257.00 | $ - | $ 1,257.00 | | $ - | |
| II.45 | Fabricate and Install Flash Enclosure | $ 1,593.00 | | $ 1,593.00 | | | $ 1,594.00 | $ - | $ 1,594.00 | | $ (1.00) | |
| II.46 | Spalled Areas | $ 385.00 | | $ 385.00 | | | $ 385.00 | $ - | $ 385.00 | | $ - | |
| II.47 | Modify Overhead Doors | $ 2,504.00 | | $ 2,504.00 | | | $ 2,504.00 | $ - | $ 2,504.00 | | $ - | |

BUILDING W-143 ROOF REPLACEMENT PROJECT

| RFFD Ref. | Description | RFFD Amount | SRC Supplemental | SRC Claim Total | Claim Days | [redacted] | P00001 - P0006 | P00008 | Final Decision Award (P00008b) | Gov't Total | Awarded Days | [redacted] | Contract Balance Due | Contract Days Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| II.48 | Surplus Material and Equipment | $ 6,236.00 | | $ 6,236.00 | | | | | $ 822.00 | $ 822.00 | | | $ 5,414.00 | |
| II.49 | Flashing of Cable Pad | $ 851.00 | | $ 851.00 | | | | $ 851.00 | $ - | $ 851.00 | | | $ - | |
| II.50 | Defective Submittal Register | $ 12,552.00 | | $ 12,552.00 | 50 | | | $ - | $ 739.00 | $ 739.00 | | | $ 11,813.00 | 50 |
| II.51 | Safety Assurance | $ 53,253.00 | | $ 53,253.00 | | | | $ - | $ - | $ - | | | $ 53,253.00 | |
| II.52 | Acceleration | $ 34,514.00 | | $ 34,514.00 | | | | $ - | $ - | $ - | | | $ 34,514.00 | |
| II.53 | General Conditions Time Extension | $ 87,151.00 | | $ 87,151.00 | 82 | | | $ 32,007.00 | $ 356.00 | $ 32,363.00 | 45 | | $ 54,788.00 | 37 |
| II.54 | Leak on Roof Deck | $ 161.00 | | $ 161.00 | | | | $ - | $ 161.00 | $ 161.00 | | | $ - | |
| II.55 | Leak Repairs (Roof Cell E) | $ 1,764.00 | | $ 1,764.00 | | | | $ - | $ 583.00 | $ 583.00 | | | $ 1,181.00 | |
| II.56 | Clean Up Effort on Bridge | $ 270.00 | | $ 270.00 | | | | $ - | $ 270.00 | $ 270.00 | | | $ - | |
| II.57 | Clean Up and Watertight Efforts Hidden Penetration, Cell J | $ 1,694.00 | | $ 1,694.00 | | | | $ - | | $ - | | | $ 1,694.00 | |
| II.58 | Clean Up and Watertight Efforts, Cell E | $ 2,303.00 | | $ 2,303.00 | | | | $ - | $ 360.00 | $ 360.00 | | | $ 1,943.00 | |
| II.59 | Clean Up and Tile Replacement - Captain's Elevator | $ 804.00 | | $ 804.00 | | | | $ - | $ - | $ - | | | $ 804.00 | |
| II.60 | Lobby Skylight Replacement | $ 3,849.00 | | $ 3,849.00 | | | | $ - | $ - | $ - | | | $ 3,849.00 | |
| II.61 | SRC Equipment Lifts and Stand-By Crane Time | $ 100,290.00 | | $ 100,290.00 | | | | $ - | $ - | $ - | | | $ 100,290.00 | |
| II.62 | Pitch Pocket for Unit #9 | $ 1,125.00 | | $ 1,125.00 | | | | $ 1,125.00 | $ - | $ 1,125.00 | | | $ - | |
| II.63 | Remove and Install Conduit | $ 3,987.00 | | $ 3,987.00 | | | | $ 3,987.00 | $ - | $ 3,987.00 | | | $ - | |
| II.64 | Credit for G-90 and G-60 Doors | $ (2,826.00) | | $ (2,826.00) | | | | $ (2,826.00) | $ - | $ (2,826.00) | | | $ - | |
| II.63 | CNO Visit | $ 633.00 | | $ 633.00 | | | | $ 633.00 | $ - | $ 633.00 | | | $ - | |
| II.64 | Proposal Preparation Costs | $ 44,848.00 | | $ 44,848.00 | | | | $ - | $ - | $ - | | | $ 44,848.00 | |
| II.65 | Disruption | $ 479,500.00 | | $ 479,500.00 | | | | $ - | $ - | $ - | | | $ 479,500.00 | |
| S. 1 & 61 | Crane and Equipment Lifts (combined supplemental increase) | | $ 62,053.00 | $ 62,053.00 | | | | | | $ - | | | $ 62,053.00 | |
| | P0006 b. Repair spalled concrete between cells J&I; SRC 27 | | | | | | | $ 508.00 | | | | | | |
| | P0006 d. Repair spalled concrete at penthouse 7; SRC 47 | | | | | | | $ 795.00 | | | | | | |
| | TOTALS | $ 1,696,492.00 | $ 73,968.26 | $ 1,770,460.26 | 132 | | $ 280,000.00 | $ 187,260.00 | $ 53,375.00 | $ 519,332.00 | 45 | | $ 1,251,128.26 | 87 |

068

Copy

# ARMED SERVICES BOARD OF CONTRACT APPEALS

APPEAL OF
STATES ROOFING CORPORATION

Under Contract No.
N62470-97-C-83197

ASBCA NO. 54854
ASBCA NO. 54860

JOINT COMPLAINT

NOW COMES Appellant States Roofing Corporation [hereinafter "SRC"], by counsel, and for its Joint Complaint for the referenced appeals arising under the referenced contract states as follows:

1. SRC is a Virginia corporation whose principal office is located at 1215 St. Julian Avenue, Norfolk, Virginia 23504. SRC is a licensed contractor that specializes in roofing construction, including renovation and new construction. SRC has successfully provided such services for a multitude of commercial and government customers, including the United States Navy.

2. The United States of America, through the Department of the Navy, Navy Facilities Engineering Command, Atlantic [hereinafter "government" or "Navy"] issued the subject and above referenced contract, Contract No. N62470-97-C-83197 [hereinafter "Contract"] to SRC for certain roof renovation work at the Naval Station, Norfolk, Virginia entitled "Building W-143 Roof Replacement, Wall Repair and Painting, Naval Station, Norfolk, Virginia" [hereinafter "Project"].

3. Throughout its completion of the Contract, SRC encountered and discovered defective contract documents, changed and differing conditions, and was directed to make various changes by the Navy. The Navy has acknowledged many, but not all, of the foregoing, and awarded Contract adjustments for some, but not all, of them.

4. Throughout performance, individual proposals were submitted by SRC to the Navy for the appropriate Contract adjustments SRC believed due. Subsequently, SRC also submitted requests for equitable adjustments [hereinafter "REA"], to the Navy for the, to those times, unresolved adjustments, furnished at the Navy's request for additional information and/or otherwise for the Navy to process the outstanding modifications due.

5. Subsequent negotiations between the parties were unsuccessful in resolving the outstanding modifications due, and SRC, by letter dated—and accompanying documents delivered—April 18, 2003, requested the Contracting Officer's Final Decision with respect to the remaining equitable adjustments due [hereafter "RFFD"]. In the RFFD, SRC sought $1,696,492.00 and 132 calendar days time extension relating to the 67 outstanding Contract adjustments due and included therein.

6. Following submission of the RFFD, the Navy issued unilateral modification P00008 dated 23 April 2003[1] as partial resolution of some of those 67 items. P00008 definitized P00001 ($23,445.00 decrease; 0 days), P00002 ($187,159.00 decrease; 0 days), P00003 ($213,949.00 increase; 0 days), P00004 ($54,524 increase; 0 days), and increased the Contract an additional $129,391.00 and added an additional 45 calendar days, for a collective monetary adjustment of $187,260.00 and a collective time increase of 45 calendar days.

7. The Contracting Officer did not furnish the requested Final Decision within the requisite time period. Initially, the Contracting Officer advised SRC that the Final Decision would be made by November 30, 2003, but did not do so. Following inquiry from SRC, the

[1] The Final Decision references P00007; however, this is a misnomer. P00007 was presented to SRC as a bilateral modification, but not accepted by SRC. The Contracting Officer subsequently issued unilateral P00008 instead, which had the same adjustments as P00007, and indeed appears to have included the same pages 2 – 5 of P00007, including the reference to that modification, perhaps explaining the misnomer.

070

Contracting Officer advised SRC should not expect a Final Decision before April 30, 2004, over one year from the submission of the RFFD.

8. Upon receipt of that notification, SRC petitioned this Board to direct the Contracting Officer to issue a decision pursuant to ASBCA Rule 1(e), which was docketed as ASBCA No. 54505-908. Following subsequent exchanges of information, this Board by order dated June 9, 2004 directed the Contracting Officer to issue a decision by September 1, 2004 to, among other things, permit conclusion of the DCAA audit the government advised was to have been completed in or around June 2004.

9. In conjunction with the DCAA audit, SRC determined it appropriate from its conversations with the auditor[2] to furnish supplemental information to the Contracting Officer with respect to Claim Items 1 (Crane) and 61 (SRC Equipment Lifts and Stand-By Crane Time), Claim Item 2 (Parapet Walls), and Claim Item 23 (Cancellation of Roof Cells D and F). That supplemental claim support was furnished through counsel to the Contracting Officer on August 25, 2004 via correspondence of that same date [hereinafter "Claim Supplementation"]. Those supplements resulted in an aggregate increase of the claim amount by $73,968.26 as set forth and attached to said correspondence.

10. The Contracting Officer's Final Decision, identified as Final Decision L04-015 [hereinafter "Final Decision"] was subsequently made and furnished by Certified Mail – Return Receipt Requested to SRC by letter dated September 1, 2004. In it, the Contracting Officer

[2] SRC has yet to be furnished with the audit results, and despite the government's averred need for the audit results to evaluate SRC's RFFD, the Final Decision does not reference or refer to the audit or its results, presumably because the same were favorable to SRC and further evidence of the government's breaches. Regardless, the government's failure to furnish the audit results limited SRC in its supplementation efforts to SRC's verbal discussions with the auditor.

acknowledged receipt of the Claim Supplementation, but advised the same was not considered in making the Final Decision, but instead would be treated separately.

11. In the Final Decision, the Contracting Officer found entitlement due SRC for Claim Item Numbers 18, 20, 23, 48, 50, 53, 54, 55, 56, and 58 of the RFFD, for a collective Contract sum increase of $53,375.00.[3] No additional days were awarded, and all other portions of the RFFD, except those compensated under P00008, were denied in their entirety. Subsequent to the Final Decision, the Contracting Officer issued a second unilateral modification P00008 dated 22 October 2004 in the amount of $56,522.00 "for items as determined by Contracting Officer's Final Decision L04-015 dated 1 September 2004" [hereinafter "P00008b"]. P00008b included $3,134.00 in interest due as calculated by the Contracting Officer through 10/31/04.[4]

12. Subsequently, by letter dated September 16, 2004, the Contracting Officer advised that the Claim Supplementation had been reviewed, but the Contracting Officer had determined that the Final Decision addressed those items. Thereafter, by letter dated September 30, 2004, identified as Final Decision L04-018, the Contracting Officer issued a letter denying SRC's "supplemental claim" and advising that the same was a "final decision" [hereinafter "Supplemental Final Decision"].

13. All conditions precedent to the filing and maintenance of this action have occurred, have been met, have been satisfied, and/or have been waived. Without limitation, SRC timely noted its appeals of both the Final Decision and the Supplemental Final Decision, and this Joint Complaint is timely filed from the dates thereof, and otherwise properly filed.

---

[3] The Final Decision summarizes the amount awarded on Page 30 as $53,400, but this appears to be a mathematical error.

[4] P00008b indicates an erroneous total contract price of $2,706,522.00, which appears to be a scrivener's error. Including the monies awarded in P00008b, the total contract balance, not including the additional monies due SRC, should have been noted in P00008b as $2,893,782.00.

072

a. SRC received the Final Decision by mail on September 3, 2004. SRC thereafter mailed its notice of appeal thereof to this Board and the Contracting Officer on November 24, 2004, within 90 days thereof. The copy of the notice of appeal sent to this Board was returned for insufficient postage, after notice of which SRC re-mailed and faxed the notice of appeal to this Board on December 3, 2004, which was docketed as ASBCA No. 54860 that same day. In any case, however, copy of the notice of appeal sent to the Contracting Officer contained sufficient postage and constituted timely notice. See Appeals of Thompson Aerospace, Inc., ASBCA No. 51548, 99-1 BCA ¶ 30,232. Furthermore, the notice of appeal concurrently mailed with respect to the Claim Supplementation, which was received by this Board within 90 days of SRC's receipt of the Final Decision, clearly noticed SRC's dissatisfaction with the Final Decision and SRC's intent to appeal the Final Decision, thus effecting timely notice of appeal of the Final Decision for those reasons as well.

b. SRC received the Supplemental Final Decision on September 30, 2004. SRC thereafter mailed its notice of appeal thereof on November 24, 2004, within 90 days thereof, which was docketed as ASBCA No. 54854 on November 29, 2004.

14. Both the Final Decision and the Supplemental Final Decision are erroneous in fact and law to the extent denying SRC's claims. Further, by failing to adjust the Contract in the amount and manner requested by SRC, the government has breached the Contract, and otherwise failed to meet its obligations owed SRC by reason thereof.

15. The adjustments to which SRC is due are summarized more particularly in SRC's notices of appeal and the applicable summaries and attachments of and to the RFED. Without limitation, however, SRC is entitled to the following summarized adjustments for the following summarized reasons:

073

a. Claim Item 1 (Crane) and Claim Item 61 (Equipment Lifts and Stand-By Crane Time). At the preconstruction conference on September 12, 2000, the government changed the work with its edict that the elevators would not be available for SRC's use for moving any construction material to and from the roof. This edict conflicted with the contract documents, upon which SRC relied in bidding this job. Specifically, but without limitation, Section 01140, Paragraph 1.5 states, "Elevator #6 will be available for material handling subject to base regulations. Use of the building elevator shall require maintenance and repair of damage due to contractors use." No base regulations precluded SRC's use of the elevator, and SRC was ready, willing, and able to perform any required maintenance or repair of damage, if any, from its use of the elevator.

After the government's unilateral decision to preclude use of the elevators, SRC, following issuance of a government change directive, used a crane to move material to the roof. As further requested by the government in response to SRC's related request for information, SRC furnished a cost proposal for this change, but to date the government has failed to fully compensate SRC for the resulting costs and impacts, and instead has only partially compensated SRC via the to-date unilateral modification amounts for this acknowledged change.

The government included elevator capacity, location, and terms of use in the contract documents, thus evidencing the government's anticipation, also verbally acknowledged by government representatives, and which was also SRC's anticipation, that use of the elevator would be permitted to complete the Contract work. The government's subsequent unilateral edict after performance began precluding the elevator's usage was not just occasional unavailability of the elevator; it was a total preclusion of its use.

The bulk and weight of the material SRC needed to move to the roof, as well as the roof height, was a constructive bar to access of the work area without the use of the elevator, which was known to the government at the time the preclusion of use was ordered, and thus was a Contract change. The impact of this change was further exacerbated with the subsequent discovery of the government-acknowledged differing site conditions associated with the roof asphalt, which made it even more difficult to do the work without using the elevator.

SRC supplied the government the requested cost proposal for the crane prior to the commencement of the work. Further, SRC maintained and has provided to the government its time tickets, invoices, and work records to support its actual costs incurred for this change throughout the project, and has responded to all inquiries regarding how and why the crane was operated and manned. At the direction of Commander Hale, SRC collected all crane related costs for reimbursement as a separate change element because he did not want SRC to price crane service with each of the other changes involving crane service; the crane component of this change is therefore part of Claim Item 61.

The amounts unilaterally awarded by the government for this acknowledged change are inadequate to equitably, fully, or properly compensate SRC. Rather, the equitable, full, and proper compensation due is as set forth in SRC Claim Items 1 and 61, as modified by the Claim Supplementation, or $262,859.00.

b. Claim Item 2 (Parapet Walls). The parapet wall was made of concrete. The Contract specifications included details as to the preparation and striping of the parapet wall. The specifications also detailed the paint requirement for all striped and bare concrete. The Contract specifications did not, however, specify a weatherproof treatment for the parapet wall, and SRC interpreted the specifications to mean the parapet wall was to be cleaned down to bare

concrete and painted according to the specifications, an interpretation that is consistent with other specifications and standards within the roofing industry.

In contrast, the Resident Officer in Charge of Construction [hereinafter "ROICC"] interpreted the Contract specifications to require SRC to install a bituminous 3-ply membrane on the backside of the parapet wall, despite the fact that details of a parapet bituminous membrane were not included in the specifications. The government, in rejecting SRC's interpretation, stated that waterproofing parapet walls meant flashing, not painting, and directed SRC to install a Dynaclade brand, primer, and 2-ply waterproofing system. SRC complied with the government's directed change.

The specifications stated that the existing concrete parapet wall would remain. The demolition requirements directed the contractor to remove, down to the bare concrete, all existing flashing, sprayed on membrane top coat, and granule surfacing from the inside face and the top of parapet wall. See page A2, sheet 3,of 45, Demo Note 23. Contract specifications for Exterior Painting apply to "[n]ew surfaces, existing coated surfaces, existing uncoated surfaces of the building and appurtenance as indicated. Also included are existing coated surfaces made bare by cleaning operations." Section 09900 includes the paint recommendation for primer and paint required for bare concrete. The section only specifically excludes slab-tops. SRC supplied the manufacturer's sketch and waterproofing information to the ROICC, supporting its interpretation that the contract specification was consistent with the manufacturer's information.

In denying SRC's entitlement for this item, the government stated that "[t]he paint specification does not *necessarily* refer to parapet walls." (Emphasis added). Instead the government argues that the term "layers" is not a term used to describe paint, and the specifications were meant to require the three-ply membrane on the parapet wall. At the same

time, however, the government admits that it inadvertently did not include the specification section for the three-ply waterproofing membrane.

Further, in refusing to adjust the Contract for this change, the government concluded that SRC's evidence "does not convincingly prove that the preponderance of the evidence from the drawings and specifications indicate that the parapet walls are to be painted." Besides being a misapplication of industry standards, the government's position misapplies the burden of the contractor with respect to such a situation, and the government claimed ambiguity in these Contract documents; rather, SRC's interpretation is a reasonable one under the facts and circumstances, and prevails.

Moreover, the government interpretation in this instance was wrong. The painting and roofing industry commonly refer to paint layers as both coats and layers. The industry also refers to the application of paint material as "waterproofing." Among other evidence on this point, SRC noted to the Contracting Officer that this Board has itself referred to paint coats as "layers" in at least sixteen decisions, and that furthermore painting parapet walls is a common industry practice and has been used in government specifications before.

In the RFFD, SRC requested $147,875.00 for this claim item. In the Claim Supplementation, SRC reduced that amount to $141,323.26. The government has not awarded SRC any monies for this claim item previously, and the amount due remains $141,323.26, which amount includes a credit for the painting of the parapet wall.

c. Claim Item 3 (Credit for Deleting Wood Blocking). At the Preconstruction Conference, SRC recommended deleting the wood nailers at the parapet perimeter and expansion joints. The government agreed, and SRC proposed a credit of

077

$17,966.00, which was derived from RS Means. The government instead has improperly applied a higher credit of $33,105.00 in P00008. The difference due SRC is $15,139.00.

d. Claim Item 14 (Lost Time: Tractor Trailers). On February 27, 2001, beginning at approximately 0830, SRC was delayed for one hour while several tractor-trailer vehicles blocked SRC's staging area. As a result, SRC's crew could not get needed roofing material to the roof and, consequently, production was temporarily suspended for that one-hour period. Had the government advised SRC such a work stoppage was planned, SRC could have worked around the stoppage, but the government did not do so and is thus responsible for the lost time cost impact of the resulting suspension, which is $1,228.00.

e. Claim Item 15 (Lost Time: Fire Drill). On February 26, 2001, an unannounced fire drill was conducted at W-143. SRC lost approximately one-hour of production time during this unannounced suspension. The fire drill was for the building's occupants, not SRC, and was not part of SRC's approved safety plan. Had the government coordinated the fire drill with SRC, the job shutdown could have been avoided, but the government did not do so and is thus responsible for the resulting time lost cost impact, which is $1,005.00.

f. Claim Item 18 (Remove Antenna Bracket). During performance, SRC encountered an abandoned antenna bracket on PH 7, Roof G, that SRC was directed to remove and with respect to which SRC was directed to plug the holes. The government has acknowledged this change and unilaterally awarded partial compensation of $224.00 for it; however, SRC is entitled to the full cost impact, $834.00, as claimed, and thus is entitled to an additional adjustment of $610.00 for this claim item.

g. Claim Item 21 (Crack Door, Roof C). After a rainstorm, it was discovered that the area adjacent to Penthouse #7 had leaks. The cause was determined to be a hairline

crack, invisible on the roof surface, but visible underneath the concrete deck. To maintain the watertight integrity of the roof, SRC had to install a base sheet using hot asphalt over an area approximately 25' x 35' adjacent to the penthouse. The cost for the change work associated with these hidden differing conditions was $1,452.00, no part of which the government has paid.

h. Claim Item 23 (Cancellation of Roof Cells D and F). At the CQC meeting on April 20, 2001, the government unexpectedly announced it was considering cancellation of Roof Cells D and F, some 8 months into a 12-month contract. Although the government is entitled to a credit for cancellation of the roof cells, such credit must consider the impact upon both items in progress at the time, as well as those items not yet started. For example, schedules were affected, suppliers were impacted, etc. Given the nature of the work and those impacts, SRC initially determined a reasonable credit for this cancelled work was $239,144.00, but they subsequently determined during the DCAA audit that amount was overstated by $18,467.00, making the credit due $220,677.00. The government, in contrast, unilaterally established and assessed an initial $361,813.00 credit for the deleted work, subsequently reduced in the Final Decision to $312,290.00, but which still was excessive under the facts or circumstances. SRC is therefore entitled to the difference, $91,613.00.

i. Claim Item 25 (Leak Clean Up). The leak in question occurred because of a government directed nightshift tear-off. This work was planned for the day time, but by directing a night tear-off the government bears the responsibility for resulting leak clean up, the cost of which was $758.00; no part of which has been paid.

j. Claim Item 38 (Conex Boxes). After the government changed the Contract by not allowing SRC's use of the elevator, SRC had to use Conex boxes to store the material for the re-roofing. The government directed three total storage containers, two of which

079



JAN-12-2005 11:19

had to be heated, to pre-stage the material, the cost of which was $9,561.00; no part of which has been paid.

k. Claim Item 39 (Cracks in Concrete, Cell E). During the removal of Roof Cell E, SRC discovered the existing concrete deck was laden with latent spiderweb-like cracks and fractures, and additionally latent holes in the concrete, all of which caused roof leaks. To rectify these latent, differing site conditions, SRC had to install two layers of base sheet hot mopped in asphalt. At the time, the government was advised of the change conditions, acknowledged them, and directed SRC to do the work for which the government agreed it would adjust the contract at a later date. But despite this, the government has since refused to do so. These problems were unforeseen roof defects entitling SRC to additional compensation, as originally acknowledged by the government, the value of which is at least $30,685.00 as claimed by SRC; no part of which has been paid.

l. Claim Item 48 (Surplus Material and Equipment). When the government cancelled various portions of the work, it failed, despite request, to provide direction to SRC for disposition of the surplus material and equipment left on site. As a result, SRC had to store the surplus material and equipment in a rented container and its warehouse. Further, SRC incurred additional labor to transport the surplus material to the storage areas, and will likely incur additional costs transporting the surplus material to vendors and in restocking fees. To date, those costs total at least $6,236.00 as claimed by SRC, of which the government acknowledged entitlement for $822.00, leaving the balance due SRC as $5,414.00.

m. Claim Item 50 (Submittal Register). Despite the government's obligation to furnish a useable submittal register, it did not do so. Following receipt of the government's initial register, SRC advised the government of various discrepancies (of the 305 line items, 187

080



JAN-12-2005 11:19

were in error). The government directed SRC to make necessary changes. Thereafter, the government official responsible for the submittal register (LT Hale) went on leave for 3 weeks, and the submittal register was left in limbo during his absence. In the interim, SRC submitted submittals in the "preliminary format."

This process extended from on or about August 14 through on or about December 7. During that process, SRC expended numerous manhours working on and revising the submittal register to comply with government direction, at a cost of at least $12,552.00, and its work performance was delayed by a period of at least 50 days. The government has acknowledged the defective submittal register, but only awarded SRC $739.00 for the deficiencies, and no time, leaving a monetary adjustment of $11,813.00 and a time adjustment of 50 days due.

n. Claim Item 51 (Safety Assurance). The Contract did not require a full time safety manager, nor did SRC's approved safety plan. SRC's safety program has been previously recognized for award, including by the subject Command, and the government's averred safety complaints were without SRC responsible basis. Despite this, the government required SRC to have a full time safety manager for the Project, entitling SRC to the cost of the same, which was $53,253.00; no part of which has been paid.

o. Claim Item 52 (Acceleration). The original project duration and requirements were such that SRC did not anticipate having to pay any premium or overtime to its workers when the job was bid. However, because of the multitude of changes, and changed and differing conditions, applicable to SRC's work, SRC unexpectedly incurred $34,514.00 in premium/overtime costs, incurred by result of government acts or orders inducing SRC to perform earlier and faster than should have been required; no part of which has been paid by the government.

p. Claim Item 53 (General Conditions Time Extension). The government has recognized the delay impact to SRC on this project, but only for 45 days and for $32,363.00. In contrast, SRC claims entitlement to an additional 82 days beyond those in Claim Item 50, and the resulting monetary impact of at least $87,151.00, all of which resulted from government-responsible delays. SRC is entitled to Contract adjustment for those differences, an additional 37 days and $54,788.00.

q. Claim Item 55 (Leak Repairs, Roof Cell E). On January 30, 2001, SRC was called to repair a reported leak near the 6th floor elevator at the main entrance. The leak was located on Stairwell Penthouse # 1, and was the result of an old existing roof patch, not SRC's work. As directed, SRC repaired the area using roofing cement, the cost for which was at least $1,764.00, including the continued leak repairs to this cell from January through June. The government has recognized SRC's entitlement for this claim item in the amount of $583.00, but not the remaining $1,181.00 due SRC.

r. Claim Item 57 (Clean Up and Watertight Efforts, Hidden Penetration, Roof Cell J). During the demolition of Cell J in April 2001, leaks damaged two offices. The first leak was located under grid B-1 on sheet A-7 and the second was under grid B-8 on sheet A-7. The leaks were caused by a hidden penetration, and the related clean up and watertight efforts were thus change work costing SRC at least $1,694.00; no part of which has been paid.

s. Claim Item 58 (Clean Up and Watertight Efforts, Cell E). During the demolition of Roof Cell E, SRC discovered three small, latent holes, approximately 10" round each, in the concrete roof deck over the FISC security office, determined to be the source of leaks reported in that space. At the government's direction, SRC incurred at least $2,303.00 to clean up from the leaks and watertight the leak areas caused by these latent conditions. The

government has recognized partial entitlement for those efforts and costs, but only for $360.00, leaving the $1,943.00 still due SRC.

t. Claim Item 59 (Clean Up and Tile Replacement, Captain's Elevator). SRC expended $804.00 to clean up and replace tile by the Captain's elevator that was not part of its original work scope and was not caused by SRC. The government wrongfully claims these leaks resulted from SRC's work, therefore paying no amount of the $804.00 due SRC.

u. Claim Item 60 (Lobby Skylight Replacement). Before SRC was aware of the extensiveness of the spalled concrete noted elsewhere herein, a piece fell onto the FISC lobby skylight, damaging the skylight. The government directed SRC to replace the skylight, even though the spalled conditions (acknowledged as a change by the government), not SRC, caused the damage. SRC did so at a cost of $3,849.00; no part of which has been paid.

v. Claim Item 66[5] (Proposal Preparation Costs). The basic premise of all equitable adjustments is that the contractor should remain whole, which the contractor is not so made if it is not paid the costs of scoping and pricing changes and preparing proposals required by the government to process such changes. Here, the government required SRC to expend these costs, and in doing so SRC reasonably expend $44,848.00 in scoping, pricing, and preparing proposals for the equitable adjustments due with respect to this Contract; no part of which has been paid.

w. Claim Item 67 (Disruption). The multitude of changes, defective contract documents, and changed and/or differing conditions encountered/directed severely disrupted SRC's work force and made it less efficient. Among other things, SRC was required to "stack

[5] The spreadsheets included with the notices of appeal inadvertently misstate the claim reference for both this and the next claim item as 64 and 65 instead of 66 and 67.

083

trades" at various times, and otherwise perform work in a less efficient manner than originally planned. SRC originally estimated its labor costs for this project to be $683,400.00; however, SRC's actual labor costs were $1,162,900.00, or a $479,500.00 overrun caused by the aforenoted government-responsible changes, defective contract documents, and changed and/or differing conditions encountered/directed and their disruptive effect upon SRC's work force and ability to work the project.

16. The outstanding balance due SRC with respect to the Contract, including by reason of the foregoing changes, defective contract documents, changed and/or differing conditions, including those Claim Items described and summarized above, is at least $1,249,825.26,[6] as summarized in the spreadsheet attached as Exhibit A and incorporated herein by reference, for which the government is liable to SRC. Additionally, SRC is due interest on those sums due in the amount and manner provided by law, including the Contract Disputes Act. The government has neither paid nor agreed to pay the damages set forth above.

WHEREFORE, States Roofing Corporation hereby prays that the Board order the Contracting Officer to equitably adjust the contract price in the amount of $1,249,825.26 and that the Board grant such additional relief as may be appropriate in these circumstances including interest, attorney's fees and costs. In the alternative, States Roofing Corporation requests the Board find the government breached the contract and grant such relief as may be appropriate.

STATES ROOFING CORPORATION

By: ______________________
Of Counsel

[6] The total amount claimed in the notices of appeal, $1,251,128.26, was slightly higher than the total amount claimed herein due to an addition error in the spreadsheet accompanying the notices of appeal.

Neil S. Lowenstein
David W. Lannetti
VANDEVENTER BLACK, LLP
500 World Trade Center
Norfolk, VA 23510
(757) 446-8610
(757) 446-8670 (facsimile)
Emails: nlowenstein@vanblk.com
dlannetti@vanblk.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was sent this 4th day of January, 2005, by U.S. Mail to Henry D. Karp, Esquire, Navy Litigation Office, 720 Kennon St., SE, Bldg. 36, Room 233, Washington Navy Yard, DC 20374-5013, the Navy's assigned trial attorney herein.

Counsel for Appellant